## 26579. SMITH v. WOOD.

DECIDED JANUARY 7, 1938.

*C. H. Dalton,* for plaintiff in error.
*Hardin & McCamy,* contra.

MACINTYRE, J. Mrs. Claud Wood made an affidavit before Edgar Jackson, J. P., that on November 23, 1936, "two jacks, sledge-hammer, and drill, and a large amount of sheet wood and paint, having been recently in the quiet, peaceable, and legally acquired possession of deponent, was taken and carried away from the possession of deponent without her consent, by fraud violence, seduction, or other means; and, as deponent believes, has

been harbored, received, or taken possession of by Edgar Smith . . under some pretended claim or claims, without lawful warrant or authority; and deponent bona fide claims a right to the possession of said property." At the conclusion of the evidence the justice of the peace awarded the property to Mrs. Claud Wood. The judge of the superior court overruled a certiorari, and Edgar Smith excepted to that judgment. The ultimate question presented for determination is whether the evidence supports the finding of the justice of the peace.

After testifying, in effect, that her husband handled all her business, that she contracted with Cleve Smith to build her a house in North Dalton, and that Smith "did not finish the house, and left some tools up there," Mrs. Claud Wood further swore: "I do not know anything about the jack. I did not carry any jack down to where my house was being built. I do not know anything about the jack. I guess Mr. Smith took the jack there. I did not have possession of the jack on the twenty-third day of November. . . I do not know who took the paint there. I did not carry it there. . . I do not know anything about any of the things mentioned in this warrant. I have never had possession of them; they were left there by Mr. Smith. Mr. Smith was doing the work on this building under a contract, and has never turned over to us this house. The tools were used by Mr. Smith and his workmen, and I do not claim possession of them; they were left there." After testifying that he was the husband and agent of Mrs. Clara Wood, and that Cleve Smith, who had contracted to build the house, quit the job and left the building unfinished, "with about $300 to have to pay on" it, Mr. Wood further swore: "Mr. Smith's son [Edgar] and some others have worked on the house since Mr. Smith has been gone. Mr. Smith brought the jacks . . up to where the building was being built, and had some other tools in the house. Mr. Smith did not bring the hammer . . or the drills. They are property belonging to the Gas Works, and I stood for them for Mr. Smith to use. Mr. Smith's boy Edgar . . brought the paint up there, I suppose. . . Mr. Cleve Smith was under contract with my wife to build the house. . . Mr. Smith left here without finishing my wife's house, and left the tools up there, and my wife is the owner of the property, and no one had a right to take tools away from there. My wife did not own the tools or

have possession of them other than they were in the house. . . The job was supposed to be a lock-and-key job. I have consented to Mr. Smith's hands working there. . . I paid these hands two or three weeks, and they left without finishing it up, and I am going to have to pay out about $300 on the matter, and the taking of the jack out of under the house . . damaged the house, and the same is being ruined on account of the house not being equipped with pillars. . . I know that my wife did not have possession of this property on the date mentioned in the warrant or any other time, other than it was in the house where they were working."

Edgar Smith testified, in part: "I took these tools away from the house of Mrs. Wood. My father was under contract to build this house, and left, and they wanted us hands to finish this house, and we had been working on for several weeks, and they failed to pay us further, and I went and got my tools. The . . jacks are mine, together with the other things, and were in my possession and not in Mrs. Wood's possession, and I did not take them in any way mentioned in the warrant. I do not know where my father is. These tools are mine; my father gave them to me. The hammer belongs to Mr. Dalton. I purchased the paint at Sterchi Brothers and had it charged to my father's account. Mrs. Wood did not have anything to do with the paint or anything else. My father is under contract with Mrs. Wood to furnish all things and erect the house. I do not know how much there is overdrawn on the contract. I have been working for Mrs. Wood on this house since my father has been gone, and they have paid me up until this last week, when they refused to pay me for a week's work, and I quit and moved my tools. I went to Mrs. Dalton's and got the hammer there when my father was working on Mr. Cooper's home." Barney Collins testified: "I worked with Mr. Cleve Smith on the house of Mrs. Wood. . . We worked on the house several weeks after Mr. Smith left. These tools . . are tools which Mr. Smith brought there, and were never in the possession of Mrs. Wood. I purchased the paint . . at Sterchi Brothers and had it charged to Mr. Cleve Smith, and Mrs. Wood did not have possession of it. The hammer . . was borrowed from Mr. Dalton. I do not know anything about the drills, except that Mr. Smith had them there and was furnishing all the material and tools to

finish the job with." R. P. Wood swore: "I am salesman at Sterchi Brothers. I sold the paint to Mr. Edgar Smith, and charged the same to Mr. Cleve Smith's account. Mr. Smith has been good as gold with us in the past." Mr. King testified: "I know that Mr. Smith sent . . to Mr. Dalton's house and got a large hammer. I think that is the hammer over there." Joe Wallace testified: "I worked with Mr. Smith on the Cooper job, and I know that we used that hammer there . . on the Cooper job. . . Those are the jacks that Mr. Smith carried to the Wood's job; they are his jacks." Abb Buckner swore: "I . . know that those jacks are Mr. Smith's, and the hammer belongs to Mr. Dalton, and was borrowed . . at Mr. Cooper's." Mr. Cooper testified: "Mr. Smith moved a house for me. He used . . some jacks like them over there. He also had a large hammer which . . was borrowed from Mr. Dalton, and he asked me about this hammer after the job was completed, and I told him I did not know who moved the hammer from my place. . ."

Under the Code, § 82-101, there are two classes of possessory-warrant cases: (1) where "any personal chattel has been taken, enticed, or carried away, either by fraud, violence, seduction, or other means, *from the possession of the party complaining;*" (2) where "such . . chattel, *having recently been in the quiet, peaceable, and legally acquired possession of such complaining party,* has disappeared without his consent, and . . has been received or taken possession of by the party complained against, under some pretended claim and without lawful warrant or authority, and . . the party complaining does in good faith claim a title to, or interest in, the personal chattel, or the possession thereof." (Italics ours.) In the early case of *Cobb* v. *Megrath,* 36 *Ga.* 625, this language occurs: "To entitle a party to recover the possession of personal property by possessory warrant, he must show that the property had previously been in his possession." To the same effect is the Code, § 82-202, which reads, in part: "On the day set apart for the trial, the judge or justice shall proceed to hear evidence as to the question of possession in a summary way, without investigating the title to the property, and shall cause the property to be delivered to the party *from whose possession* the same was violently or fraudulently taken or enticed away, or from whom the same absconded, or *in whose peaceable and lawful posses-*

*sion it last was."* (Italics ours.) Having set out the evidence rather fully, we shall not repeat it. Our view is that the evidence failed to show previous possession of the property in question in Mrs. Claud Wood, or title in her, or interest in her. It follows that the court erred in overruling the certiorari.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*